# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**                                      **Case No. 6:15-Cr-176-Orl-37KRS**

**JOSHUA ADAM TATRO,**

     **Defendant.**

_____/

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND REQUEST FOR AN EVIDENTIARY HEARING

Joshua Adam Tatro ("Mr. Tatro"), by and through undersigned counsel, hereby moves this Honorable Court pursuant to Fed. R. Crim. P. 12(b)(3)(C) to suppress all statements obtained through a violation of Mr. Tatro's rights guaranteed under the Fifth Amendment, and requests a hearing on the matter. Specifically, Mr. Tatro did not knowingly and intelligibly waive his *Miranda* rights[1] when he made statements relating to alleged production of child pornography.

In support, Mr. Tatro states the following:

### BACKGROUND

On March 17, 2015, at approximately 4:13 p.m.[2], Agents Spadafora and Deavers

---

1 *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.")

2 Govt. Audio Recording titled "TATRO1.wma."

from the Brevard County Sheriff's Office went to a residence in Brevard County to interview Mr. Tatro during the course of a child pornography investigation for the state of Florida.   The agents had a search warrant, issued by a Florida Circuit Judge that authorized the search of the residence for evidence of child pornography.   According to discovery provided by the Government, the agents did not execute the search warrant until after the agents spoke to Mr. Tatro for about 30 minutes.[3] This interview was non-custodial and focused on the online trafficking of child pornography.

At approximately 5:00 p.m.[4], the agents searched the residence and discovered additional evidence.   At 6:00 p.m., Mr. Tatro was arrested.[5]   Agent Spadafora subsequently interviewed Mr. Tatro again after reading him his *Miranda* rights, which Mr. Tatro allegedly waived.[6]   The entirety of the *Miranda* rights discussion, as heard in the audio recording[7], is transcribed as follows:

> <u>Agent Spadafora</u>:    Let me read your *Miranda* rights, okay?   We brought you back here--. You have the right to remain silent, anything you say...
>
> *<crosstalk>*
>
> <u>Mr. Tatro</u>:   Can you shut the door please?

---

3 *E.g.*, Govt. Bates 009-0012; Govt. Bates 0063-0065; Govt. Bates 0247-0249; Govt. Audio Recording titled "TATRO1.wma."

4 Govt. Bates 0238.

5 Govt. Bates   0224 (Arrest Affidavit).

6 Police reports at Govt. Bates 0249 and 0396 indicate Mr. Tatro was read his *Miranda* rights twice because the first time the audio recorder was not activated.   Mr. Tatro received the audio recording of the second time the *Miranda* rights were read as an audio recording titled: "TATRO2.wma."   According to the police report, Mr. Tatro "advised he understood his rights" on both occasions prior to speaking to the agents again.

7 Govt. Audio Recording titled "TATRO2.wma."

<u>Agent Spadafora</u>:   Yeah, let me shut this door. Anything you say can be used against you in court.   You have the right to talk to a lawyer for advice before we answer you--. Before we ask you any questions and have him with you during questioning. If you cannot afford a lawyer, one will be appointed to represent you before any questions if you wish. If you decide to answer questions now, without a lawyer present, you…will still have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to [*unintelligible*]. Do you understand those questions?

<u>Mr. Tatro</u>:   Yeah.

<u>Agent Spadafora</u>:    Okay.

There is no indication in the audio recording as to what "those questions" were or whether Mr. Tatro understood which rights he was waiving by "those questions."   There was also no written waiver.   According to the discovery[8], Mr. Tatro then gave several additional incriminating statements regarding the possession of child pornography, the production of child pornography and of the sexual abuse of minors under the age of eleven.

The following day, on March 18, 2015, the agents returned to the residence to speak with other people who lived at the residence about Mr. Tatro's competence.[9]

On April 16, 2015, the State of Florida, filed a criminal information, in the Eighteenth Judicial Circuit, charging Mr. Tatro with multiple counts of capital sexual battery, child exploitation, and child pornography offenses. The Florida charges against Mr. Tatro are still pending.

On July 30, 2015, an indictment for the instant case was filed in federal court

---

8 *See* note 3, *supra*.

9 Govt. Bates 0250-0251.

3

charging Mr. Tatro with nine counts of production of child pornography, three counts of receipt of child pornography, and one count of possession of child pornography. Doc. 1. These charges arise from the same course of conduct alleged in the state case.

During the course of Mr. Tatro's federal case, he was evaluated by the Bureau of Prisons ("BOP") for competency and was found competent to proceed to trial.   On November 16, 2015, the BOP issued a forensic report, opining that Mr. Tatro was mentally competent to proceed. Additionally, the BOP psychiatric team administered tests that indicated that Mr. Tatro's overall intellectual functioning was estimated to fall in the extremely low range. The BOP psychiatric team found that Mr. Tatro met the diagnosis of Mild Intellectual Disability. The team also recognized that, prior to turning 18 years old, Mr. Tatro had been deemed mentally retarded, had significant academic difficulties, and "displayed impairments in adaptive functioning."   *See* BOP Report, page 6.

### MEMORANDUM OF LAW

Mr. Tatro did not knowingly and intelligently waive his *Miranda* rights. The manner in which the *Miranda* rights were conveyed to Mr. Tatro, in conjunction with Mr. Tatro's significant mental deficits, indicate Mr. Tatro did not fully comprehend what he was asked to give up.

The Eleventh Circuit has summarized the standard for determining the waiver inquiry as follows:

> With respect to the waiver inquiry, "a valid waiver ... cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation even if he has been advised of his

4

rights." *Edwards* [*v. Arizona*], 451 U.S. [477] at 484, 101 S.Ct. [1880] at 1884–85 [(1981)]. Rather, for a waiver to be voluntary, knowing, and intelligent, (1) "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and (2) "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 420–21, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986) (discussing the waiver of a suspect's *Miranda* rights to be "fully apprise[d] ... of the State's intention to use his statements to secure a conviction, and ... to remain silent and to have counsel present if he so desires" (quotation omitted and alterations adopted)). For a court to conclude that a defendant waived his *Miranda* rights, the totality of the circumstances surrounding the interrogation must reveal both an uncoerced choice and the requisite level of comprehension. *Id.*

*Everett v. Sec'y, Florida Dept. of Corr.*, 779 F.3d 1212, 1241 (11th Cir. 2015) *cert. denied sub nom. Everett v. Jones*, 136 S. Ct. 795 (2016).

Furthermore, the government must demonstrate that the waiver was voluntary, knowing, and intelligent by a preponderance of the evidence. *Hall v. Thomas*, 611 F.3d 1259, 1285 (11th Cir. 2010). The prosecution "does not need to show that a waiver of *Miranda* rights was express," and "an implicit waiver" of the *Miranda* rights is sufficient. *Id.* (citations omitted).

The undersigned would submit that Mr. Tatro did not voluntarily waive his constitutional rights when questioned by Agent Spadafora. Accordingly, any and all statements made after Mr. Tatro was arrested, should be suppressed.

The undersigned requests that this Honorable Court schedule an evidentiary hearing to determine this issue.

## CONCLUSION

In light of the foregoing, Mr. Tatro, through undersigned counsel, respectfully

requests this Honorable Court suppress any and all statements obtained through a violation of Mr. Tatro's *Miranda* rights and requests a an evidentiary hearing on this matter.

The Government opposes this motion.  Additionally, the Government further objects to this motion on the grounds that it is untimely.

I hereby certify that the undersigned electronically filed the foregoing *Motion to Suppress Statements and Request for an Evidentiary Hearing* with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to Andrew Searle, Assistant United States Attorney, this the 14th day of April 2016.

Respectfully submitted,

Donna Lee Elm
Federal Defender


*/s/James T. Skuthan*
James T. Skuthan
First Assistant Federal Defender
Florida Bar Number 0544124
201 South Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone: 407-648-6338
Facsimile: 407-648-6095
E-Mail: jim_skuthan@fd.org
Counsel for Joshua Adam Tatro