UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                              CASE NO. 6:15-cr-176-Orl-37KRS

JOSHUA ADAM TATRO

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, files its sentencing memorandum and respectfully requests that this Court sentence the Defendant to a guidelines sentence of 4,200 months in federal prison followed by a life term of supervised release as set forth in the Presentence Report ("PSR") prepared by the United States Probation Office.   A guidelines sentence in this case will achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a) because it will reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and, most importantly, protect children from further crimes of the Defendant.

## BACKGROUND

Twenty-four year-old Joshua Adam Tatro ("Tatro") engaged in a pattern of horrific sexual abuse of a three-year-old child (hereinafter, the "minor victim").   PSR at p. 4 and ¶ 20.   During a period of at least five

months, from October 2014 to March 2015, Tatro sexually exploited and abused the minor victim, and produced child pornography of this abuse.   Id. at ¶ 31 a) through i).   Tatro's abuse of the child included penetrating the child's anus with his penis, forcing the child to perform oral sex on him, and performing oral sex on the child.   Id.   Tatro produced both images and videos of his sexual abuse of the minor victim, and stored the child pornography on his two cell phones, and on his Google online account.   Id. at ¶¶ 31, 33, and 40.   Tatro also used the Kik internet messenger application (hereinafter, "Kik") on his cell phones to distribute the child pornography images and videos of the minor victim to numerous other individuals.   Id. at ¶ 35.   Further, Tatro produced some child pornography videos when other individuals he communicated with on Kik asked him for such videos.   Id.

In addition to the produced child pornography depicting the minor victim, Tatro possessed a large cache of child pornography photographs and videos on his two cell phones, and on his Google account.   Id. at ¶ 41. Tatro's child pornography collection included depictions of children as young as infants, and some of this child pornography involved bondage, masochistic or sadomasochistic conduct, and bestiality.   Id.

Tatro's aforementioned conduct came to light as a result of a joint federal and state law enforcement investigation.   Specifically, on January 24,

2

2015, Google notified the National Center for Missing and Exploited Children ("NCMEC") about a Google account that had uploaded 14 images of child pornography onto a Google online account drive.   Id. at ¶ 19.   After several investigative steps, NCMEC was able to link this Google account to Tatro, and a CyberTipline Report was generated and routed to the Brevard County Sheriff's Office.   Id. at ¶¶19-22.   Using the information in the CyberTipline Report, a federal task force agent with the BCSO obtained a search warrant for Tatro's residence on Merritt Island, Florida.   Id. at ¶ 26.

On March 17, 2015, agents from the BCSO went to Tatro's residence to interview him and execute the search warrant. Id.   When the agents knocked on the door to the residence, an occupant, who was not Tatro, opened the door.   Id.   The agents observed the minor victim inside the house and asked to speak to Tatro.   Id.   Tatro approached the agents and the federal task force agent commenced interviewing Tatro.   Id. at ¶ 26 and 27.   During this initial interview, Tatro admitted that he masturbated to child pornography but deceived the interviewing agents.   Id. at ¶ 27.   Specifically, Tatro claimed that there was no child pornography on his "new" cell phone (hereinafter, "Tatro's new cell phone") and that he had never produced child pornography. Id.

After the interview, agents recovered Tatro's new cell phone from his pants pocket.   Id. at ¶ 28.   During the execution of the search warrant at Tatro's residence, agents recovered Tatro's "old" cell phone (hereinafter, "Tatro's old cell phone"), which was located in his bedroom on top of a dresser.   Id.   A preliminary forensic examination of Tatro's new cell phone revealed that there were several videos of Tatro sexually abusing the minor victim stored on the cell phone.   Id. at ¶ 31.   From the information embedded in the videos, agents were able to determine that the videos had been made recently, in February and March 2015.   Id.

After the discovery of these videos, agents interviewed Tatro a second time.   Id. at ¶ 35.   During this interview, Tatro admitted to sexually abusing the minor victim, producing child pornography videos and images of the minor victim, and distributing the produced child pornography, via Kik, on one of his cell phones.   Id.   Tatro claimed that he only produced child pornography depicting the minor victim on two occasions in 2014.   Id.

Eventually, complete forensic examinations were conducted on Tatro's two cell phones.   Id. at ¶ 30 and 33.    In addition, Google provided law enforcement with the contents of Tatro's Google online account.   Id. at ¶ 40. In total, Tatro possessed 299 photographs and 14 videos of child pornography involving the minor victim, on his two cell phones.   Id. at ¶ 41.   In addition

to the produced child pornography depicting the minor victim, Tatro

possessed 443 photographs and 62 videos of child pornography on his two cell

phones, and 1,110 images of child pornography on his Google account.   Id.

Through the forensic examinations of his cell phones, agents also

discovered that Tatro had conducted online searches concerning an eight-year-

old child who resided in Merritt Island, including searching the elementary

school that the child attended.   Id. at ¶ 33.   In a subsequent interview, this

child's mother confirmed to agents that Tatro knew the child, and had asked

her about the child's age and where the child attended school.   Id. at ¶ 34.

Tatro also offered to baby-sit the child.   Id.

Kik chats between Tatro and another Kik user were also located on one

of Tatro's cell phones during the forensic examinations.   See Government's

Trial Exhibit #15.   In these Kik chats, Tatro and the other user discussed

sexually abusing another minor child who Tatro believed was in the care and

custody of the other Kik user.   Id. at Bates No. 0564-0568.   In addition,

Tatro advised the other Kik user not to use laptop computers when viewing

child pornography because law enforcement could detect the "address" on the

computer.   Id. at Bates No. 0563-0564.

On July 6, 2016, after a bench trial, Tatro was convicted of nine counts

of production of child pornography, in violation of 18 U.S.C. § 2251(a), three

counts of receipt of child pornography, in violation of 18 U.S.C.

§ 2252A(a)(2)(B), and one count of possession of child pornography, in

violation of 18 U.S.C. § 2252A(a)(5)(B).   Doc. 85.   The horrific and

pervasive nature of Tatro's crimes has resulted in an advisory guidelines range

of 4,200 months of imprisonment.   For the reasons that follow, the United

States requests that the Court sentence Tatro to the advisory range of 4,200

months in federal prison followed by a life term of supervised release.

## ARGUMENT

1.   <u>The Nature and Circumstances of the Offense</u>

The nature and circumstances of Tatro's offenses are atrocious and

militate in favor of a guidelines sentence.   <u>See</u> 18 U.S.C. § 3553(a)(1).   Tatro

is a pedophile who, until his arrest, had abused and exploited a very young

child.   Tatro was responsible for looking after the minor victim, while the

mother of the minor victim worked and attended school.   PSR at ¶ 36.

Instead of caring for the minor victim, Tatro subjected the child to horrific acts

of abuse, as detailed above.   At Tatro's bench trial, the Court had an

opportunity to view the unspeakable images and videos of this abuse.

Tatro also expressed an interest in abusing other children.   As noted

above, Tatro engaged in Kik chats with another Kik user about sexually

abusing another minor child who Tatro believed was in the custody of the

individual he was communicating with.   Further, Tatro conducted internet research on an eight-year-old child he knew.   Tatro also asked this child's mother if he could baby-sit the child.   The United States firmly believes that Tatro, if given the opportunity, would have sexually abused more child.   The United States also contends that Tatro was actively seeking out such an opportunity.

In addition to his "hands-on" abuse of the minor victim, Tatro distributed images and videos of the minor victim's abuse to "tons of people," to use his own words.   Id. at ¶ 35.   Most disturbingly, Tatro produced videos of the minor victim's abuse simply because other individuals on the internet asked him for such videos.   Id.   Thus, Tatro placed the images and videos of the minor victim into the stream of illegal commerce for child pornography on the internet, and permitted other pedophiles to view these images and videos, thereby, perpetuating the victimization of the child.

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses."   United States v. Sarras, 575 F.3d 1191, 1220 (11th Cir. 2009) (court affirmed as reasonable a 100-year-sentence for a first offender who sexually abused a 13-year-old girl and photographed the abuse). The Supreme Court has long recognized that childhood sexual abuse has devastating and long-lasting effects on its victims.   See New York v. Ferber,

458 U.S. 747, 758 n. 9 (1982) ("It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults.).

More recently, the Eleventh Circuit affirmed a life sentence imposed by the District Court for a similarly situated defendant who sexually abused and raped his own daughter inside their home while she was between the ages of 14 and 17.   See United States v. Marshall, No. 13-14095, 2014 WL 6653569 (11th Cir. Nov. 25, 2014).   The Eleventh Circuit found Marshall's sentence reasonable in light of the District Court's view that the offense was "more egregious than any [it] had ... address[ed]."   Id.   As noted above, Tatro engaged in similar conduct to that of Marshall, with an even more vulnerable and helpless victim.   Further, Tatro's advisory guidelines call for a 4,200-month sentence, whereas the Court in Marshall varied upward from a guidelines range of 235 to 293 months to a sentence of life imprisonment.

No upward variance is requested in Tatro's case.      His criminal conduct ranks at the forefront of an "egregious and despicable" field of crime and his advisory guidelines range reflects that.   A 4,200 sentence is appropriate under these circumstances.

2.    The History and Characteristics of the Defendant

Although Tatro's personal history and characteristics present some mitigation for the Court to consider, such mitigation does not outweigh the many aggravating factors in Tatro's offense that weigh in favor of a guidelines sentence.   The history and characteristics factor is aimed at distinguishing among defendants who commit a particular offense or type of offense. United States v. Irey, 612 F.3d 1160, 1203 (11th Cir. 2010).   Tatro is an egregious "hands-on" offender who repeatedly sexually molested and raped a three-year-old child, irreparably scarring the child for life, and forever damaging the lives of the child's family.   Thus, Tatro's criminal conduct is so extensive and serious that it outweighs any mitigation presented by his personal history and characteristics.

Tatro suffers from mental disabilities, including microcephaly, however, the minor victim also suffers from this disease, thereby making the victim of Tatro's offense all the more vulnerable.   Doc. 111 at 2.   Tatro was also the victim of sexual abuse as a child, however, Tatro has continued this vicious cycle by sexually abusing the minor victim.   Id. at 8.   Tragically, in October 2016, the BCSO received a complaint that the minor victim acted out sexually with another child at an elementary school.   Thus, Tatro's sexual abuse of the minor victim has already resulted in reverberations in the community.

3.      Just Punishment, Adequate Deterrence, Respect for the Law,
and Protection of the Public

A guidelines sentence also meets the sentencing goals of adequate

deterrence, respect for the law, protection of the public and just punishment in

this case.

Deterrence is a particularly weighty factor in this case.   "The more

serious the crime and the greater the defendant's role in it, the more important

it is to send a strong and clear message that will deter others."   Irey, 612 F.3d

at 1212.    Tatro engaged in a pattern of illegal sexual activity involving an

extremely young and vulnerable child.   Not only was he the abuser, but he

also produced and distributed child pornography images of the child.   As

noted, Tatro was attempting to seek out other children to abuse, and was

communicating with likeminded individuals on the internet.     The Eleventh

Circuit has held that deterrence is "particularly compelling in the child

pornography context" and that district courts should give significant weight

deterring the production of child pornography and protecting children who are

victimized by it.   United States v. Pugh, 515 F.3d 1179, 1194 (11th Cir. 2008).

In addition, Tatro understood that his actions were illegal, yet the threat of

law enforcement action did not deter him.   As mentioned above, Tatro

communicated with another Kik user on how to evade law enforcement

detection by not viewing child pornography on laptop computers.   In

10

addition, Tatro was deliberately evasive and misleading during his interviews with the agents.   In his initial interview, Tatro attempted to distance himself from the Google account that was used to upload the child pornography images discovered by NCMEC.   Later, Tatro claimed that this Google account was "hacked" sometime in the past year.   Tatro also claimed that one of his two cell phones had been turned into MetroPCS along with the sim card.   After agents discovered some of the produced child pornography on one of Tatro's cell phones, Tatro claimed that he only produced the child pornography on two occasions in 2014.   The complete forensic examination of Tatro's cell phones later revealed that Tatro produced child pornography involving the minor victim on nine different dates in between October 2014 and March 2015.   Tatro's actions and his false statements to agents indicate that Tatro committed these horrendous crimes in a calculating fashion.

Based on the facts set forth above in detail, Tatro has demonstrated that he is an extreme danger to children.   Further, instead of caring for the minor victim or placing the child in the custody of someone who could, Tatro subjected the child to repeated sexual abuse.   Consequently, a substantial sentence is warranted to specifically deter Tatro from sexually abusing minors, to promote respect for the law and to provide for just punishment.

"Congress explicitly [has] recognized the high rate of recidivism in

11

convicted sex offenders, especially child sex offenders."   United States v. Allison, 447 F.3d 402, 405-06 (5th Cir. 2006); see also, Pugh, 515 F.3d at 1201 ("As Congress has found and as we have discussed, child sex offenders have appalling rates of recidivism and their crimes are under-reported.").   A sentence of 4,200 months in federal prison will forever protect children from further crimes by Tatro and the magnitude of the harm that will occur if he does commit more sex crimes against children.   Such a sentence would also strongly deter likeminded individuals in the Middle District of Florida who might seek to sexually abuse or exploit the most vulnerable members of our society, our children.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court to sentence Tatro to a term of 4,200 months of imprisonment followed by a life term of supervised release.   In light of the serious nature of the offense, the need for the protection of children, just punishment, deterrence, and the need to promote respect for the law, a guidelines sentence is reasonable.

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney

By:     *s/ ANDREW C. SEARLE*
ANDREW C. SEARLE
Assistant United States Attorney
Florida Bar No. 0116461
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:    (407) 648-7643
E-mail:     Andrew.Searle@usdoj.gov

**U.S. v. JOSHUA ADAM TATRO**          **Case No. 6:15-cr-176-Orl-37KRS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 14, 2016, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which

will send a notice of electronic filing to the following:

James T. Skuthan, Esquire.

/s/ *ANDREW C. SEARLE*
ANDREW C. SEARLE
Assistant United States Attorney
Florida Bar No. 0116461
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:    (407) 648-7643
E-mail:       Andrew.Searle@usdoj.gov